1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SEAN VASQUEZ,                          No.  2:25-cv-02432 SCR P

12              Plaintiff,

13         v.                                ORDER

14    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
15    REHABILITATION, et al.,

16              Defendants.

17

18         Plaintiff is incarcerated in state prison and proceeding pro with a civil rights action under

19    42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.

20    ("Title II" or "ADA").  Plaintiff's complaint is before the undersigned for screening under 28

21    U.S.C. § 1915A.  ECF No. 1.  For the reasons set forth below, the undersigned finds that

22    plaintiff's complaint states a cognizable Title II claim against defendant California Department of

23    Corrections and Rehabilitation ("CDCR") but no other cognizable claims.  Plaintiff will be given

24    the option of proceeding on the complaint as screened or filing an amended complaint.  In

25    addition, plaintiff's motion to appoint counsel (ECF No. 2) is denied without prejudice.

26                            **IN FORMA PAUPERIS**

27         Plaintiff has requested leave to proceed without paying the full filing fee for this action,

28    under 28 U.S.C. § 1915.  ECF No. 6.  He has submitted a declaration showing that he cannot

                                        1

1   afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to

2   proceed in forma pauperis is granted.  This means that plaintiff is allowed to pay the $350.00

3   filing fee in monthly installments that are taken from the inmate's trust account rather than in one

4   lump sum.  28 U.S.C. §§ 1914(a).  As part of this order, the prison is required to remove an initial

5   partial filing fee from plaintiff's trust account.  See 28 U.S.C. § 1915(b)(1).  A separate order

6   directed to CDCR requires monthly payments of twenty percent of the prior month's income to be

7   taken from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid

8   in full.  See 28 U.S.C. § 1915(b)(2).

9                                      **STATUTORY SCREENING**

10          The court is required to screen complaints brought by prisoners seeking relief against "a

11   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  A

12   claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v.

13   Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on

14   an indisputably meritless legal theory or factual contentions that are baseless.  Neitzke, 490 U.S.

15   at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an

16   arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

17          In order to avoid dismissal for failure to state a claim a complaint must contain more than

18   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

19   of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

20   "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

21   statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

22   court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

23   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

24   inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

25   considering whether a complaint states a claim, the court must accept the allegations as true,

26   Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

27   favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

28   /////

1

**PLAINTIFF'S COMPLAINT**

2

**I.    Factual Allegations**

3

The events underlying plaintiff's complaint occurred at Mule Creek State Prison

4

("MCSP").  ECF No. 1 at 1.  The complaint names four defendants: (1) California Department of

5

Corrections and Rehabilitation ("CDCR"); (2) M. Horwood, Supervisor of Correctional

6

Education Programs at MCSP; (3) P. Dinger, Adult Basic Education ("ABE") teacher at MCSP;

7

and (4) E. Pederson, Appeals Coordinator at MCSP.  Id. at 2.

8

When plaintiff was in high school, the Los Angeles County Office of Education identified

9

him as having a "specific learning disability" and provided an individualized education program

10

("IEP") with accommodations.  ECF No. 1 at 6.  Plaintiff alleges that his ABE III teacher,

11

defendant Dinger, was unresponsive to these disability-related needs.  Id. at 3.  Plaintiff's ABE III

12

class was discontinued in April 2024 until October 2024 when defendant Dinger took over as the

13

substitute teacher.  Plaintiff was preparing for the GED on a computer program called AZTEC.

14

Plaintiff informed defendant Dinger that he had a learning disability and needed assistance to

15

obtain his GED.  Id.  Defendant Dinger confirmed that plaintiff had a learning disability but left

16

him alone to complete assignments with no instructions or assistance.  Id. at 3-4.

17

Dinger's unresponsiveness to plaintiff's disability-related needs happened at least three

18

more times, including on January 14, 2025.  ECF No. 1 at 4.  Plaintiff said he would file an

19

appeal if Dinger was unwilling to assist him.  In a raised voice, Dinger said that if plaintiff needed

20

assistance spelling his name it's "D-i-n-g-e-r."  Id.  Plaintiff alleges Dinger on "occasions" made

21

racist remarks and claimed he didn't like Black people.  Id. at 5.  Plaintiff submitted an appeal in

22

late January 2025 informing the educational supervisors that he was not being given ADA

23

assistance and that Dinger was hostile and confrontational.  Id. at 4-5.  The appeal was granted

24

and CDCR agreed to accommodate plaintiff.[1]  Id. at 5-6.  Dinger was reassigned in March or

25

April 2025.  Id. at 6.

26

27

28

---

[1] The grievance response reflects that CDCR will provide plaintiff with the following accommodations:  "(1) Additional time to complete assignments; (2) Prompt for completing assignments; and (3) Check for understanding, breaks between assignments, shortened assignments, & assignment seating."  ECF No. 1 at 35.

1    Plaintiff seeks to hold defendant CDCR vicariously liable for the violations of the other

2    defendants.  ECF No. 1 at 6.  Specifically, plaintiff claims defendant Horwood is liable for (1)

3    failing to assign an ABE III teacher for approximately six months, which deprived plaintiff of

4    rights to participate in education and the possibility to benefit from "milestone credits" that were

5    available to other students during this period; and (2) authorizing defendant Dinger, who was ill-

6    equipped and not properly trained, to substitute in ABE III.  ECF No. 1 at 6.  Plaintiff alleges

7    defendant Pederson failed to provide effective communication when he mailed the appeal

8    response instead of bringing it to plaintiff and explaining the answers.  Id. at 8.

9    Plaintiff asserts two causes of action: (1) deliberate indifference exclud[ing] plaintiff from

10    participating in [and] benefitting from the educational services offered by CDCR; and (2)

11    intentional discrimination on the basis of race.  ECF No. 1 at 6-8.  He claims the defendants'

12    discriminatory actions have caused mental anguish that affected his sleep, family relations, self-

13    esteem, future goals, and ability to remain positive about getting back on track.  Id. at 9.  As

14    relief, plaintiff requests that defendant CDCR pay $100,000 in damages for each act or omission

15    attributed to defendants Horwood, Dinger, and Pederson.  Id. at 9-10.  Plaintiff additionally

16    requests that CDCR pay $800,000 for its own acts and omissions.  Id. at 10.

17                                         **LEGAL STANDARDS**

18    **I.        42 U.S.C. § 1983**

19    A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

20    privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

21    including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

22    under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

23    (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v.

24    County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

25    **II.       Title II of the ADA**

26    Title II of the ADA prohibits public entities from discriminating on the basis of disability.

27    42 U.S.C. § 12132.  The Act applies to the services, programs, and activities provided to

28    incarcerated persons with disabilities within state prisons, including prison education programs.

1  See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998) (noting that prisons

2  provide educational programs that are subject to Title II); see also Armstrong v. Wilson, 124 F.3d

3  1019, 1023 (9th Cir. 1997) ("[T]here is no doubt that an educational program is a program, and

4  when it is provided by and in a state prison it is a program of a public entity.") (quoting Crawford

5  v. Indiana Dep't of Corrections, 115 F.3d 481, 483 (7th Cir. 1997)).

6        To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

7        (1) [H]e is an individual with a disability; (2) he is otherwise qualified to
      participate in or receive the benefit of some public entity's services, programs, or

8        activities; (3) he was either excluded from participation in or denied the benefits
      of the public entity's services, programs, or activities, or was otherwise

9        discriminated against by the public entity; and (4) such exclusion, denial of
      benefits, or discrimination was by reason of [his] disability.

10

11  O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007).  "A disability

12  discrimination claim may be based on 'one of three theories of liability: disparate treatment,

13  disparate impact, or failure to make a reasonable accommodation.'"  Payan v. Los Angeles

14  Community College Dist., 11 F.4th 729, 738 (9th Cir. 2021).  In contrast to a Title II disparate

15  impact claim, which "is focused on modifying a policy or practice to improve systemic

16  accessibility," a Title II "reasonable accommodation claim is focused on an accommodation

17  based on an individualized request or need[.]"  Id.  In the context of higher education, Title II

18  requires public entities to provide reasonable accommodations to qualified individuals with

19  disabilities to ensure equal access to their educational programs.  See Wong v. Regents of

20  University of California, 192 F.3d 807 (9th Cir. 1999).

21        In addition, "[t]o recover monetary damages under Title II of the ADA … a plaintiff must

22  prove intentional discrimination on the part of the defendant."  Duvall v. County of Kitsap, 260

23  F.3d 1124, 1138 (9th Cir. 2001).

24  **DISCUSSION**

25  **I.**      **Claims under Title II of the ADA**

26        The undersigned construes plaintiff's first claim as alleging a failure to provide a

27  reasonable accommodation under Title II of the ADA against defendant CDCR only.  Plaintiff

28  makes clear, particularly in the request for relief, that he seeks to hold CDCR vicariously liable

1    for the actions of the individual defendants.  See ECF No. 1 at 10-11.  This is appropriate, as a

2    public entity is vicariously liable for the acts of its employees under Title II.  See Duvall, 260

3    F.3d at 1141.  Moreover, state officials in their individual capacities are not proper defendants

4    under Title II of the ADA.[2]  See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

5         Turning to the merits, the undersigned finds plaintiff has stated a cognizable Title II claim

6    against CDCR based on the alleged actions of Dinger and Horwood that impeded his access to

7    MCSP's GED class.  First, plaintiff is an individual with a disability for purposes of the Act.  See

8    42 U.S.C. § 12102(2)(A) (listing "reading" and learning" as major life activities).  Second, he is

9    qualified for and participates in MCSP's educational programs.  Third, plaintiff has adequately

10   alleged that Dinger denied him the reasonable instructional accommodations that he requires to

11   complete the ABE III course.  Plaintiff has also sufficiently alleged that Horwood's supervisory

12   failures to train Dinger or intervene to stop the discrimination further impeded his access to the

13   program.  See Est. of Jackson v. City of Modesto, No. 1:21-cv-0415 AWI DEM, 2021 WL

14   4819604, at *11 (E.D. Cal. Oct. 14, 2021) (recognizing a failure-to-train theory of ADA liability

15   after discussion of Circuit authority).  Finally, plaintiff has alleged that the discrimination was by

16   reason of his learning disability and showed deliberate indifference through facts describing

17   Dinger's alleged hostility and mocking response to his requests for help.

18        However, plaintiff has not stated a cognizable ADA claim based on defendant Pederson's

19   alleged failure to ensure effective communication in the prison appeal process.  Title II does

20   require public entities to "take appropriate steps to ensure that communications with applicants,

21   participants, and members of the public with disabilities are as effective as communications with

22   others" and "furnish appropriate auxiliary aids and services where necessary to afford an

23   individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a

24

25   [2]  State officials sued in their official capacities are proper defendants under Title II.  Miranda B.
     v. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003).  Plaintiff does not specify the capacity in
26   which he sues the defendants.  However, the undersigned finds that construing the complaint to
     name defendants Dinger, Horwood, or Pederson in their official capacities would be redundant of
27   defendant CDCR, and serve no purpose for plaintiff.  See Ctr. For Bioethical Reform, Inc. v. Los
     Angeles County Sheriff Dept., 533 F.3d 780, 799 (9th Cir. 2007) (district courts have discretion
28   to dismiss official capacity defendant when the government entity itself is named).

1    service, program, or activity conducted by a public entity." K.M. ex rel. Bright v. Tustin Unified

2    Sch. Dist., 725 F.3d 1088, 1096 (9th Cir. 2013) (citing 28 C.F.R. § 35.160(a) and (b)(1)).  But

3    plaintiff does not allege he asked Pederson or any other official not to mail the appeal response

4    and to instead to read and explain it to him.  "Before a public entity can be required under the

5    ADA to provide a disabled individual an auxiliary aid or service, a public entity must have

6    knowledge of the individual's disability and the individual's need for an accommodation."

7    Robertson v. Las Animas Cty. Sheriff's Dep't, 500 F.3d 1185, 1196 (9th Cir. 2007).  Plaintiff will

8    be given leave to amend and allege, if he can, that he requested this specific accommodation or

9    other facts that show his need for the accommodation requested here was obvious.

10          Accordingly, plaintiff has alleged a cognizable Title II claim against CDCR only based on

11    the actions of Dinger and Horwood that impeded his equal access to MCSP's education program.

12          **II.      Racial Discrimination Claim**

13          Plaintiff's second claim alleges intentional racial discrimination.  ECF No. 1 at 8.  The

14    undersigned construes this claim as naming defendant CDCR only, as plaintiff claims CDCR is

15    "vicariously liable for the racially motivated discriminatory conduct" by defendant Dinger.  Id. at

16    8.  Unlike his ADA claim, plaintiff does not identify the federal statutory or constitutional

17    provision underlying the racial discrimination claim.  To the extent plaintiff is raising an equal

18    protection challenge under 42 U.S.C. § 1983,[3] it fails for several reasons.

19          First, courts have found that "[r]acial slurs and other verbal abuse by state actors, without

20    more, do not violate the Constitution and therefore cannot support a claim under § 1983." Kemp

21    v. Sacramento State L. Libr., No. 2:19-cv-0173 JAM AC PS, 2019 WL 1255267, at *2 (E.D. Cal.

22    Mar. 19, 2019) (citing Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)).  Second,

23    there is no vicarious liability under § 1983.  Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018).

24    Finally, CDCR is not a "person" for purposes of § 1983, and as an agency of the State of

25    California, is immune from private damage actions or suits for injunctive relief brought in federal

26

27    [3]  A clue that plaintiff may be seeking to proceed under § 1983 on this claim comes at the
      beginning of the complaint, where plaintiff asserts § 1983 as one of the bases of federal
28    jurisdiction in addition to Title II.  See ECF No. 1 at 2.

1    courts under § 1983.  Brown v. California Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009)

2    (citations omitted).  While Dinger's alleged comments are repugnant, plaintiff will not be given

3    leave to amend this claim because there is no scenario in which they could plausibly raise to a

4    constitutional violation.[4]

5             **III.    Options From Which to Choose**

6             After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

7    plaintiff has adequately stated a valid claim for relief pursuant to Title II of the ADA against

8    defendant CDCR.  However, the allegations in the complaint are not sufficient to state any claim

9    for relief against defendants Dinger, Horwood, or Pederson.  Plaintiff's ADA claim against

10   Dinger, Horwood, and Pederson fail because, among other reasons, the ADA applies only to

11   public entities and plaintiff expressly seeks to hold CDCR vicariously liable for these defendants'

12   respective actions.  In addition, plaintiff's second claim asserting CDCR's vicarious liability for

13   defendant Dinger's alleged racist comments are not cognizable under § 1983.

14            It appears to the undersigned that plaintiff may be able to allege facts to fix the problems

15   regarding defendant Pederson's failure to accommodate plaintiff's learning disability in the prison

16   grievance process only.  Therefore, plaintiff has a choice to make.  After selecting an option from

17   the two options listed below, plaintiff must return the attached Notice of Election form to the

18   court within thirty (30) days from the date of this order.

19            **Option No. 1:** The first option available to plaintiff is to proceed immediately against

20   defendant CDCR on his disability discrimination claim under Title II of the ADA.  By choosing

21   this option, plaintiff will be agreeing to voluntarily dismiss defendants Dinger, Horwood, and

22   Pederson.  The court will proceed to immediately serve the complaint and order a response from

23   defendant CDCR.

24            **Option No. 2:** The second option available to plaintiff is to file an amended complaint to

25   fix the problems described above regarding the ADA claim based on defendant Pederson's

26

27   [4]  The outcome would be different if Plaintiff were suing Dinger on this claim and could allege
     facts showing Dinger treated him differently than students of other races, or if Dinger's comments
28   were so severe or pervasive so as to rise to unlawful harassment.

                                                      8

1 actions in the prison grievance procedure.  If plaintiff chooses this option, the court will set a

2 deadline in a subsequent order to give plaintiff time to file an amended complaint.

3 If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

4 about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode,

5 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named

6 defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).

7 There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

8 connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy,

9 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

10 participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266,

11 268 (9th Cir. 1982) (citations omitted).

12 Plaintiff is also informed that the court cannot refer to a prior pleading to make his

13 amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an

14 amended complaint replaces the prior complaint, with "the latter being treated thereafter as non-

15 existent."  Ramirez v. Cnty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) (citations

16 omitted).  **Therefore, in an amended complaint, every claim and every defendant must be**

17 **included.**

18 ### MOTION TO APPOINT COUNSEL

19 **I.    Plaintiff's Motion**

20 Plaintiff seeks the appointment of counsel based on his status as a "qualified individual

21 with a disability" and the fact that the individual who helped him draft the complaint and motion

22 to appoint counsel will no longer be available.  ECF No. 2 at 1.  Plaintiff insists that his learning

23 disability is an "'advantage' that defendants will undoubtedly exploit."  Id. at 3.  He further

24 asserts that discovery and pretrial conferences are far beyond his comprehension and that he is

25 indigent and lacks formal legal training.  Id. at 2-3.  The fact that the grievance was accepted is

26 evidence of his ADA claim's merit.  Id. at 4.

27 **II.    Legal Standards**

28 District courts lack authority under 28 U.S.C. § 1915 to require counsel to represent

1    indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298

2    (1989).  In exceptional circumstances, the court may request that an attorney voluntarily represent

3    such a plaintiff.  See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.

4    1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  The test for exceptional

5    circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and

6    the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal

7    issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v.

8    Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances common to most prisoners, such as lack

9    of legal education and limited law library access, do not establish exceptional circumstances that

10   would warrant a request for voluntary assistance of counsel.  Wood, 900 F.2d at 1335; Riley v.

11   Franke, 340 F. Supp. 3d 783, 787 (E.D. Wis. 2018).

12          Beyond § 1915(e)(1), other sources of law may implicate a request for counsel.  For

13   example, appointed counsel may be required in a civil proceeding as an accommodation for a

14   litigant who is disabled.  See Franco-Gonzalez v. Holder, No. 10-cv-02211 DMG (DTBx), 2013

15   WL 3674492, at *3-*9 (C.D. Cal. Apr. 23, 2013) (granting summary judgment to class of

16   mentally disabled individuals in civil immigration proceedings on their request for appointed

17   representatives under the Rehabilitation Act).  Due process may also require appointment of

18   counsel in certain proceedings.  See Turner v. Rogers, 564 U.S. 431, 444-45 (2011) (analyzing

19   request for appointment of counsel in civil proceeding under the Mathews v. Eldridge, 424 U.S.

20   319 (1976), procedural due process framework).

21          **III.    Discussion**

22          Plaintiff has not established exceptional circumstances warranting the appointment of

23   counsel under § 1915(e).  Plaintiff's indigency and lack of legal training are circumstances

24   common to most prisoners that generally do not warrant the voluntary assistance of counsel.  See

25   Wood, 900 F.2d at 1335.  The undersigned agrees that the acceptance of plaintiff's grievance and

26   CDCR's subsequent commitment to accommodate him in the GED class is evidence of the ADA

27   claim's merit.  However, the legal claims, and the factual basis for those claims, are not

28   particularly complex.  The complaint and attachments alone present, in a straightforward manner,

10

1  the accommodations that plaintiff is entitled to under the ADA and that defendant Dinger

2  allegedly failed to provide.  See ECF No. 1 at 15-48.  The undersigned would not anticipate

3  significant, additional factual development of these claims.

4         Plaintiff's disability-related arguments in support of the appointment of counsel are well

5  taken.  Plaintiff's complaint included IEP and psychoeducational report findings from

6  approximately 2012-2014 that reflect reading comprehension difficulties and some cognitive

7  impairment.  See ECF No. 1 at 20, 28.  However, plaintiff has not shown that his disabilities

8  impair his meaningfully participation in the case at this early stage.  He claims the person who

9  helped him write his well-written filings will soon be unavailable but provides no additional

10  details.  Moreover, the cases plaintiff cites for support involve the appointment of counsel at trial.

11  See, e.g., Parham v. Johnson, 126 F.3d 454, 461 (3d Cir. 1997) (reversing and remanding where

12  the district court abused its discretion in not appointing counsel to incarcerated pro se litigant at

13  trial); Solis v. Cnty. of Los Angeles, 514 F.3d 946, 958 (9th Cir. 2008) (holding district court

14  abused its discretion in not appointing trial counsel to incarcerated pro se litigant with an eighth-

15  grade education).

16         Accordingly, plaintiff's motion for appointment of counsel is denied.  The denial is

17  without prejudice, which means that plaintiff may renew his request upon a showing of

18  exceptional circumstances or a demonstration of how he is unable to meaningfully participate in

19  that particular stage of the case solely on the basis of his learning disabilities.  See Franco-

20  Gonzalez, 2013 WL 3674492, at *4.

21         **PLAIN LANGUAGE SUMMARY OF THIS ORDER FOR PARTY PROCEEDING**

22                          **WITHOUT A LAWYER**

23         Some of the allegations in the complaint state claims against the defendants and some do

24  not.  The complaint states an ADA claim against CDCR based on Dinger's and Horwood's failure

25  to accommodate you in the ABE III class.  It does not state ADA claims against Dinger,

26  Horwood, or Pederson because they are not public entities like CDCR.  You also do not allege

27  facts showing you were owed an accommodation in the prison grievance process.  Finally,

28  defendant Dinger's allegedly racist remarks by themselves do not violate the Constitution.

1  You have a choice to make.  You may either (1) proceed immediately on your ADA claim

2  against CDCR and voluntarily dismiss the other claims and defendants; or, (2) try to amend the

3  complaint.  To decide whether to amend your complaint, the court has provided the relevant legal

4  standards for your ADA claims and the standards for amending complaints above.  The

5  undersigned has also denied your request to appoint counsel.  You can request counsel again at a

6  later stage of the case if you face specific problems bringing your case.

7  **CONCLUSION**

8  Accordingly, IT IS HEREBY ORDERED that:

9  1.  Plaintiff's request for leave to proceed in forma pauperis (ECF No. 6) is GRANTED.

10  2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff

11  is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.

12  § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the

13  appropriate agency filed concurrently herewith.

14  3.  Plaintiff's claims against defendants Dinger, Horwood, and Pederson do not state

15  claims for which relief can be granted.

16  4.  Plaintiff has the option to proceed immediately on his ADA Title II claim against

17  defendant CDCR as set forth above, or to file an amended complaint.

18  5.  Within thirty (30) days from the date of this order, plaintiff shall complete and return

19  the attached Notice of Election form notifying the court whether he wants to proceed on the

20  screened complaint or whether he wants to file an amended complaint.

21  6.  If plaintiff does not return the form, the court will assume that he is choosing to

22  proceed on the complaint as screened and will recommend dismissal without prejudice of

23  defendants Dinger, Horwood, and Pederson.

24  7.  Plaintiff's motion for appointment of counsel (ECF No. 2) is dismissed without

25  prejudice.

26  DATED: December 17, 2025

27  _____

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

28

12

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    SEAN VASQUEZ,                              No.  2:25-cv-02432 SCR P

12                     Plaintiff,

13             v.                                NOTICE OF ELECTION

14    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
15    REHABILITATION, et al.,

16                     Defendants.

17

18         Check one:

19    _____  Plaintiff wants to proceed immediately on his ADA Title II claim against defendant

20         CDCR without amending the complaint.  Plaintiff understands that by choosing this

21         option, the remaining defendants and claims will be voluntarily dismissed without

22         prejudice pursuant to Federal Rule of Civil Procedure 41(a).

23

24    _____  Plaintiff wants time to file an amended complaint.

25

26    DATED:_____

27                                        _____
                                          Sean Vasquez,
28                                        Plaintiff pro se

                                                 1